NEDERLANDSCHE PETROLEUM EN ASPHALT MAATSCHAPPIJ, Appellant, *v.* INTEROCEAN OIL COMPANY, Respondent.

First Department, February 8, 1924.

Depositions — action by Dutch corporation to recover damages for failure to deliver oil — examination of plaintiff before trial may be had on notice under Civil Practice Act and Rules of Civil Practice — contract made before World War provided for suspension in case of war — defense that plaintiff became alien enemy not good — defendant not entitled to examination before trial as to alleged defense — listing plaintiff on trading with enemy list did not make it alien enemy — defendant not entitled to examination as to failure of plaintiff to make deposit of stock.

The examination before trial of the plaintiff, a non-resident Dutch corporation, may be had under the Civil Practice Act and the Rules of Civil Practice upon notice to the attorneys who have appeared for it in the action and it is not necessary to procure an order.

In an action by a Dutch corporation to recover damages for the failure of the defendant to deliver oil under a contract made prior to the World War, the defendant is not entitled to examine the plaintiff before trial as to an alleged defense that the plaintiff became an alien enemy, since there is no allegation or proof on the part of the defendant to show that the plaintiff ever became an alien enemy except the fact that its name was placed on the trading with the enemy list issued by the War Trade Board of the United States, and for the further reason that said defense is not available since it appears that the contract provided that in case of war it should be suspended and would be revived after the termination thereof.

The mere fact that the plaintiff's name was placed on the trading with the enemy list did not constitute the plaintiff an alien enemy.

Furthermore, if placing the plaintiff's name on a trading with the enemy list constitutes it an alien enemy, that proof is available to the defendant without an examination of the plaintiff.

The defendant is not entitled to examine the plaintiff as to the alleged defense that the plaintiff failed to deposit certain profit shares, the delivery of which

was required by the contract as a condition precedent, since the burden is on the plaintiff in establishing full performance of the contract on its part to show that the shares were delivered.

Appeal by the plaintiff, Nederlandsche Petroleum En Asphalt Maatschappij, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 25th day of September, 1923, as resettled by an order entered in said clerk's office on the 16th day of October, 1923, requiring the plaintiff, by its officers, to appear before one of the justices of the Supreme Court at Special Term for the purpose of being examined before trial.

*Burlingham, Veeder, Masten & Fearey* [*John L. Galey* of counsel], for the appellant.

*Edward D. Brown* [*Charles Hollender* of counsel; *Edward D. Brown* with him on the brief], for the respondent.

McAvoy, J.:

The order made by the court at Special Term directed the president and secretary of the plaintiff corporation who are residents of Holland to appear in New York for examination before trial. The order was made after plaintiff had moved to set aside the notice served on the plaintiff's attorney which required the two officers to appear in New York for examination on July 18, 1923, notice having been served on July tenth. The order also provides in the alternative that if plaintiff elects to have the examination taken at Rotterdam, Holland, instead of New York, plaintiff may, upon giving ten days' notice of making such election, have the examination held there. The defendant then is to move the court on two days' notice for an order fixing the compensation of the defendant's attorney and the expenses of his attendance in Holland for taking such an examination.

The action in which this examination is sought is to recover damages for breach of a contract. The parties made an agreement in May, 1914, whereby the defendant agreed to sell to the plaintiff and deliver at its refinery in Vlissingen, Holland, and the plaintiff agreed to purchase and pay for during the period of three years from June 1, 1915, approximately 125,000 barrels of oil annually. The contract provided that if either of the parties was unable to perform in whole or in part all of its obligations by *force majeure*, including acts of God, strikes, lockouts or other industrial disturbances, wars, blockades, insurrections, riots, fires, floods, perils of the sea, exhaustion of the oil wells from which the defendant obtains its supplies, or from causes not within the control of the parties claiming relief from any require-

ment of the agreement, and which by exercise of due diligence, the party would not be able to overcome, the obligation under the contract would be suspended during the continuance of any such hindrance, provided that the suspension should be claimed at the time.

The contract further provides that it should only become effective if the plaintiff should acquire a lease on a certain oil storage plant at Vlissingen for a period of ten years on or before August 1, 1914, and in case that the plaintiff should by that time have provided for the collection of a certain sum of money so as to make the same applicable for the purpose of constructing a refinery on the property referred to in the contract. The complaint then alleges that defendant was rendered unable by hazards of navigation arising out of the European War and restrictions on navigation imposed by the warring countries to make shipments during the continuance of hostilities; and that the obligation of the defendant was accordingly suspended until the armistice of November 11, 1918; and that in June, 1918, more than four months before the armistice, defendant declared to the plaintiff that it would not deliver any oil under the contract at any time after the termination of the war; and that it refused to perform the contract and rejected, renounced, repudiated and abandoned the same.

There were further demands at the time that the armistice was signed, and in June, 1920, the defendant again confirmed its refusal to ship oil. This refusal of the defendant, as claimed, made it unnecessary to demand the maximum quantity of 300,000 barrels, or to give notice to the defendant of the quantity to be shipped in excess of the minimum amounts called for by the contract, and plaintiff claims to have been ready, willing and able and desirous to avail itself of the maximum quantity of oil to be delivered under the contract and to receive the oil at its storage and refinery plant at Vlissingen to the amount of 300,000 barrels; and that it was willing and able to pay for the same at the contract price, and by reason of the breach of the contract, plaintiff has suffered damages.

The defendant admits that there was a contract made, which is annexed to the complaint, but denies certain other allegations of the complaint and sets out four separate defenses, the first three of which deal with the claim that the appellant did so conduct itself as to become and to be declared an alien enemy, and that it was placed upon the enemy trading list under the Trading with the Enemy Act, which became a law on October 6, 1917. (See 40 U. S. Stat. at Large, 411, chap. 106, as amd.)

It is alleged that under the terms of the Trading with the Enemy

Act, citizens of the United States were prohibited from trading with persons, partnerships or corporations who were declared under the act to be enemies, and prior to the time when the defendant would have become obligated to deliver any oil to the plaintiff, plaintiff so conducted itself that it became an enemy of the United States and that all citizens were prohibited from trading with it and that plaintiff continued to be such an enemy of the United States until July 2, 1921; that by reason of the appellant having committed the acts alleged, the contract was dissolved and ended.

The fourth defense is that there was a condition precedent to any act required on the part of the defendant by the contract, to wit, that the plaintiff was to deposit 2,500 of its profit shares with the Allegemeene Administratie en Trust Kantoor of Rotterdam and that unless the plaintiff notified the said Trust Kantoor that the defendant had not complied with the conditions of the agreement the Trust Kantoor was to deliver the shares to the defendant; that although defendant performed all the terms and conditions on its part to be performed, plaintiff failed to deposit the 2,500 shares for the defendant.

Defendant claims that if it were permitted to examine appellant's agents and officers and to examine the books bearing the entries of the names and addresses of the firms, persons and corporations with whom it dealt, it could ascertain in what manner and how the appellant conducted itself so that it became an alien enemy. Such facts, it is asserted, are peculiarly within the knowledge of the appellant and the defendant is unable to obtain knowledge or information from any other source.

Defendant claims that due to the voluntary acts of the plaintiff, the defendant was placed in a position wherein it was compelled to cancel and rescind the contract and that performance of it would have meant assisting an enemy of the United States and the defendant would thereupon have been declared an enemy and placed upon the enemy trading list.

The preliminary objection that such an examination must be had, pursuant to an order, is not sustained by any provision of the Civil Practice Act or the Rules of Civil Practice. Examination may be had upon notice to attorneys who have appeared in an action whether the parties are residents or non-residents. A party has the option to proceed by notice of motion to obtain an order for an examination before trial, but it is not now a necessary mode. (See Civ. Prac. Act, § 288 *et seq.*) We think, nevertheless, that the order should be reversed because there is no proper showing that any of the testimony sought to be elicited is material or necessary to any valid defense set up in the answer.

The principal ground for requiring the attendance of these witnesses is that they would testify that the plaintiff so conducted itself that it became, and pursuant to the Trading with the Enemy Act was declared by the President to be, an enemy alien.

It appears from defendant's affidavit on this motion that defendant has no ground for believing that the plaintiff was an enemy alien and that defendant's allegation as to plaintiff's enemy character is without foundation.

The term " enemy " being defined in section 2 of the Trading with the Enemy Act (40 U. S. Stat. at Large, 411), can only apply to a neutral where he was doing business within the territory of an enemy or ally of enemy of the United States.

Plaintiff being a Dutch corporation and nowhere alleged to be doing business in an enemy country, it cannot be said that there is any likelihood of proof of its being an enemy alien.

Defendant's sole ground of belief that the plaintiff was an enemy was that it was listed on a so-called trading with the enemy list issued by the War Trade Board of the United States, but this was merely a list of persons suspected of trading with the enemy, or in such a position that they might have traded with the enemy to the disadvantage of the United States.   The President could not declare persons alien enemies or classify persons as allies of enemies unless they were native citizens or subjects of an enemy or an ally of an enemy country.   The placing, therefore, on the enemy trading list of a person's name did not make him an alien enemy.   Whether or not, however, plaintiff was an alien enemy or its name was upon the trading with the enemy list is unimportant, since this would be no defense under the terms of the contract, because if the plaintiff became an alien enemy or was so situated as to prevent trading, the contract nevertheless was to be revived after the termination of such hindrance, *i. e.*, arising out of war, and while its performance might have been abrogated, by serving notice under the Trading with the Enemy Act, there is no allegation that it was so abrogated.   Further, the proof that plaintiff was on the trading with the enemy list is available here, and if this did constitute it an alien enemy, the law would affect that status.

As to the testimony relating to the deposit of shares, the last specification of the order requires that the plaintiff's officers give testimony " That the plaintiff failed to deliver 2,500 of its profit shares to the Allegemeene Administratie en Trust Kantoor of Rotterdam for the benefit of the defendant, as provided in the agreement annexed to the complaint."

Obviously the defendant cannot examine the plaintiff as to

this issue. The burden of proving delivery of the shares, if required by the contract as a precedent condition, would be on the plaintiff, not on the defendant, as the plaintiff must prove its own performance before it can recover of the defendant.

The order should be reversed, with ten dollars costs and disbursements, and the motion to vacate the notice for examination granted, with ten dollars costs.

CLARKE, P. J., DOWLING, SMITH and MERRELL, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion to vacate examination granted, with ten dollars costs.